UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA ROBISON,

      Plaintiff,

v.                                      Case No. 10-11159
                                         HON. AVERN COHN

AAA OF MICHIGAN,

      Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

This is an employment discrimination case.  Plaintiff Rhonda Robison (Robison) alleges racial discrimination by her current employer AAA of Michigan (AAA) under Title VII and Michigan's Elliott-Larsen Civil Rights Act (ELCRA).

Now before the Court is AAA's motion for partial summary judgment, arguing that certain discriminatory acts in support of Robison's claim are barred by the Title VII and ECLRA statutes of limitations.  For the reasons that follow, the motion will be granted.  The case will go forward on the basis of Robison's 2008 layoff, as described below.

### II. FACTS

Robison is a current employee of AAA.  Robison was originally hired by AAA in 1981.  In 2005, Robison began working as a regional manager in AAA's centralized regional claims department (CRC).  In 2006, an internal company audit identified deficiencies in CRC.  In January, 2007, Robison received a 2006 year-end performance rating of "met some" based on the audit findings.  As a consequence of both the audit and

performance rating, Robison did not receive a 2006 performance bonus or salary increase in 2007.  Further, Robison was transferred to a claims team, which she was informed of in December, 2006, and which was finalized in January, 2007.  Robison's position in the CRC was filled by a Caucasian male.

On March, 1, 2008, Robison was laid off.  According to AAA, Robison's layoff was due to a company-wide reduction in force.  According to Robison, her layoff was due to race; she claims that she and three other African-American managers were the only ones to lose management positions as a result of the reorganization.  Robison was rehired in 2008 as a claims specialist.

On February 14, 2008, Robison filed a charge with the Equal Employment Opportunity Commission (EEOC), claiming racial employment discrimination based on the above described 2006 CRC audit (audit); the 2006 performance evaluation (evaluation); the 2007 replacement by a Caucasian male (replacement); and the 2008 layoff.  On March 4, 2010, Robison filed the present lawsuit.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(a).  Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When a motion for summary judgment is properly made and supported, an opposing party must set out

2

specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  All facts and inferences should be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV. ANALYSIS

AAA's sole ground for partial summary judgment is that certain of Robison's claimed discriminatory acts are barred by the Title VII and ECLRA statutes of limitations: (1) the audit; (2) the evaluation; and (3) the replacement.  AAA argues that the only event on which Robison can rely in support of her racial discrimination claim is the 2008 layoff.

As an initial matter, a plaintiff claiming a Title VII violation must file an administrative charge within 300 days of the event.  42 U.S.C. § 2000e-5(e)(1); Nichols v. Muskingum College, 318 F.3d 674, 679-80 (6th Cir. 2003); see also Hedrich v. Board of Regents of Univ. Of Wisconsin, 274 F.3d 1174, 1181 (7th Cir. 2001) (employee has 300 days from time she suffered adverse employment action allegedly based on discrimination to file complaint with state commission or EEOC).  Similarly, a claim for violation under the ELCRA may be brought within three years from the date of injury.  Magee v. DaimlerChrysler Corp., 472 Mich. 108, 113 (2005) (citing M.C.L. § 600.5805 (10)).  The date of injury for purposes of determining the start of the limitations period is the date of alleged wrongdoing.  Joliet v. Pitoniak, 475 Mich. 30, 40-41 (2006).

Here, Robison filed her EEOC charge on February 14, 2008, meaning that unlawful conduct occurring before April 20, 2007 falls outside the Title VII statute of limitations. Further, Robison filed the present lawsuit on March 4, 2010, meaning that unlawful conduct occurring before March 4, 2007, is time-barred by the ELCRA statute of limitations.

Robison does not dispute that the audit, evaluation, and replacement occurred prior

3

to April 20, 2007 and March 4, 2007, thus, falling outside of the statute of limitations for both Title VII and the ECLRA.  However, as to the audit and evaluation, Robison argues that the acts are not time-barred because of the recent amendment to Title VII in the form of the Lilly Ledbetter Act, 42 U.S.C. § 2000e-5(e)(3)(A) (the Fair Pay Act).   As to the replacement, Robison argues that it should not be dismissed because it serves as background evidence related to the remaining action; the 2008 layoff.

### A. Audit and Evaluation

As stated, Robison does not dispute that the audit and evaluation occurred outside of the Title VII and ECLRA statutes of limitations.  Rather, the dispute centers around whether the Fair Pay Act applies, which states in pertinent part:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, <u>or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice</u>.

<u>Id.</u> (emphasis added).

### i.

AAA first argues that the Fair Pay Act does not apply because it  is intended to address discriminatory compensation decisions and not decisions relating to performance that impact an employee's compensation, like the audit and evaluation. AAA cites to several out of circuit cases in support of this proposition, including <u>Richards v. Johnson & Johnson, Inc.</u>, 2009 WL 1562952 (D.N.J. June 2, 2009).

In response, Robison asserts that it does apply.  Particularly, she says that

4

she is discriminated against each time she receives a paycheck for less than what it may have been but for the audit and evaluation; discrimination which she says is covered under the Fair Pay Act. Thus, because she has received a paycheck after April 20, 2007, Robison argues that the audit and evaluation are not time-barred under the Title VII or ELCRA statutes of limitations.

Further, during oral argument on June 1, 2011, Robison asserted that the Fair Pay Act applies on the ground that the present case is similar to the facts of Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), superseded by statute in part, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 11–2, 123 Stat. 5 (2009); primarily, because Ledbetter provided evidence of performance evaluations in support of her claim. The Court disagrees.

First, Johnson & Johnson, Inc., supra, is persuasive in that it held that a plaintiff's claim of racial discrimination based on unfavorable performance ratings and ultimately less pay continued to be barred, notwithstanding the Fair Pay Act. Id. at 9-10. In further support, Johnson & Johnson, Inc., supra, cites to Leach v. Baylor Coll. Of Med., 2009 WL 385450 (S.D. Tex. Feb. 17, 2009), which held that the Fair Pay Act applies only to "discriminatory compensation claims" and not to "discrete acts other than pay." Id. at *17. Here, the audit and evaluation on which Robison relies in part to support her claim are discrete discriminatory acts which resulted in a pay decrease as opposed to discriminatory compensation acts, i.e., an unlawful pay scheme, covered under the Fair Pay Act. Thus, as was the case in Johnson & Johnson, Inc., supra, the audit and evaluation acts continue to be time-barred, notwithstanding the Fair Pay Act.

5

Moreover, Robison's argument relating to <u>Ledbetter</u>, <u>supra</u>, is not persuasive. Ledbetter's case involved an unlawful compensation scheme claim. Particularly, because she was a female, the compensation scheme set Ledbetter's pay at an amount significantly less than that of her male counterparts performing the same work. <u>See id.</u>, at 643-45 (Ginsburg, J., dissenting) (Ledbetter's "formal administrative complaint specified that, in violation of Title VII, Goodyear paid her a discriminatorily low salary because of her sex"). Further, the compensation scheme affected Ledbetter over many years and without her knowledge. <u>Id.</u> (over a period of nearly twenty years, Ledbetter's pay slipped in comparison to her fifteen male counterparts: in 1997 when she retired, "Ledbetter was paid $3,727 per month; the lowest paid male area manager received $4,286 per month, the highest paid, $5,236").

Here, Robison does not allege that AAA has an unlawful compensation scheme. There is also no claim that Robison's similarly situated non-African American counterparts have been over time been paid significantly more under a discriminatory compensation scheme because of their race. Rather, as stated, Robison claims racial employment discrimination based on discrete acts – an unfavorable audit, evaluation, and replacement – which she was aware of and which she claims prevented her from receiving a pay increase, bonus, promotion, and other job opportunities. (<u>See</u> Complaint, Doc. 1-2, alleging that Robison "was denied salary increases, job opportunities, promotions and other benefits associated with her employment by [AAA] for the principle reason that she is an African American female"). Accordingly, while both cases involve performance evaluations,

6

they are nonetheless distinguishable.  See id. ("[p]ay disparaties are thus different from adverse actions such as termination, failure to promote, . . . or refusal to hire, all involving fully communicated discrete acts, easy to identify as discriminatory") (internal quote marks and citation omitted).

ii.

AAA also argues that even if the Fair Pay Act applies, the audit and evaluation remain time-barred because the Fair Pay Act is retroactive to discriminatory acts occurring on or after May 28, 2007.  42 U.S.C. § 2000e-5 (stating that amendment "take[s] effect as if enacted on May 28, 2007 and appl[ies] to all claims of discrimination in compensation").   That is, because the audit and evaluation occurred before May 28, 2007, AAA argues that they fall outside the statute of limitations.  The Court disagrees.

AAA fails to provide authority for its interpretation of the Fair Pay Act's enforcement provision.   A Fifth Circuit case, Ganheart v. Xavier University of Louisiana, 347 Fed. Appx. 25, 2009 WL 2900776 (5th Cir. 2009), is nevertheless instructive.  In Ganheart, the Fifth Circuit rejected a plaintiff's argument that a Title VII claim was timely under The Fair Pay Act, holding that the claim was time-barred because "[t]he magistrate judge began his [statute of limitation] calculations with [plaintiff's] last day of employment . . ., not the date that she was first subject to any alleged discriminatory compensation decision."  Id. at 26.  Accordingly, the court held that "the magistrate judge's method of calculating the statute of limitations period comported with the [Fair Pay] Act."  Id.  In other words, Ganheart says that a court should calculate the Fair Pay Act limitations period starting with the last day

7

that an employee receives discriminatory pay.

Here, Robison is still employed with AAA and is still receiving paychecks in an amount less than what she may have earned but for the audit and evaluation. Thus, calculating the statute of limitations using today's date, the audit and evaluation acts fall within the statute of limitations under the Fair Pay Act. Accordingly, if the Court would have found in Robison's favor on the issue of whether the Fair Pay Act applies, the audit and evaluation acts would have been timely. However, because the Court finds that it does not apply, the acts are time-barred.

## B. Replacement

As to the replacement, i.e., Robison being replaced by a Caucasian male in 2007, Robison argues it should not be dismissed because further discovery may reveal that the evidence related to the claim is useful as background evidence in support of her timely action; the 2008 layoff. In support, Robison relies on Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002), in which the Supreme Court held that Title VII does not "bar an employee for using the prior [time-barred] acts as background evidence in support of a timely claim." Id. at 113. The Court disagrees.

Particularly, Morgan, supra, stands for the proposition that untimely acts may be used as background evidence if timely acts remain, not that the acts are no longer time-barred. Thus, here, Robison may not use the replacement as an independent act to support the racial employment discrimination claim and AAA is entitled to partial summary judgment on this ground.

8

However, under <u>Morgan</u>, Robison is entitled to use the replacement as background evidence in support of the remaining claimed discriminatory act; the 2008 layoff.  Indeed, Robison may also use the audit and evaluation as background evidence.  <u>See</u> <u>Johnson & Johnson</u>, supra, at *31-32 ("while the Fair Pay Act does not save untimely discrimination claims outside the compensation context, it is quite apparent that the statute explicitly reaffirms the evidentiary principle enunciated in <u>Morgan</u>: that Title VII . . . do[es] not bar an employee from using time-barred acts as background evidence in support of other untimely claims").

## V. CONCLUSION

For the above reasons, AAA's motion for partial summary judgment is GRANTED, as it relates to Robison's claims of discrimination based on the audit, evaluation, and replacement.  The case goes forward, as it relates to Robison's 2008 layoff.

SO ORDERED.

Dated:  June 8, 2011                           S/Avern Cohn
                                               AVERN COHN
                                               UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 8, 2011, by electronic and/or ordinary mail.

                                               S/Julie Owens
                                               Case Manager, (313) 234-5160

9