UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA ROBISON,

    Plaintiff,

vs.    Case No. 10-11159

AAA OF MICHIGAN,    HON. AVERN COHN

    Defendant.

_____/

# MEMORANDUM AND ORDER
# GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 25)

## I. Introduction

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, et seq. and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101, et seq. Plaintiff Rhonda Robison (Robison), an African-American, is suing her current employer, defendant AAA of Michigan (AAA), claiming that AAA terminated her employment and did not rehire her earlier and into a higher position because of her race and in retaliation for prior EEOC complaints.

Before the Court is AAA's motion for summary judgment. For the reasons that follow, the motion will be granted.

## II. Background

The following facts are substantially taken from the parties' joint submission of material facts. Doc. 31.

Robison was hired by AAA in 1981 as a clerical employee. She was promoted several times, to Claims Adjuster, Senior Claims Adjuster, Claims Manager, and in 2003,

to Regional Claims Manager.  In 2005, Robison began working as a Regional Manager in AAA's centralized regional claims department (CRC).  In 2006, an internal company audit identified deficiencies in CRC.  In January, 2007, Robison received a 2006 year-end performance rating of "met some" based on the audit findings.  As a consequence of both the audit and performance rating, Robison did not receive a 2006 performance bonus or salary increase in 2007.  Further, Robison was transferred to a claims team, which she was informed of in December 2006, and which was finalized in January, 2007.  Robison's position in the CRC was filled by a Caucasian male.

Fausto Martin (Martin) became employed as Vice President and Chief Claims Officer of AAA's Claims Department on October 1, 2007.  Soon after his hire, Martin began considering ways to restructure the Claims Department to gain efficiencies. According to his declaration and deposition testimony, Martin viewed the Claims Department as having overlapping and unnecessary layers of management and believed that it was not organized in a logical or efficient manner.  As will be explained, Robison views Martin's efforts differently, contending that Martin was engaged in a reduction in force and a subterfuge for discrimination.

In early 2008, Martin decided to "flatten" the organization by removing unnecessary layers of management and to also realign the duties of several managers to more logically fit within the various Claims business units.  Martin decided to reduce the department's director and regional manager positions by seven, and he added five new lower level manager positions.  One of the regional manager positions Martin eliminated was then held by Robison.  According to Martin, Robison had varied  responsibilities related to auto physical damage reporting, certain vendor management responsibilities, and duties

related to IT projects, which in his view were not logically combined under her management.  As a result, Martin reassigned Robison's duties to other claims units where he believed they more logically belonged.

Martin says that in making his decisions in 2008 as to which positions to eliminate or duties to reassign, he did not consider any incumbent employee's current or previous work performance evaluation or length of employment with AAA.  He also was not familiar with the job performance or any work-related issues regarding any manager within the claims department that occurred prior to his hire by AAA, with the exception of his direct report managers.  Martin further says that because Robison and other regional claim managers did not directly report to him in 2008, he had no knowledge or personal opinion of their previous work performance evaluations or of any previous complaints against them.  Martin likewise says he had no knowledge of any appeal or complaint by Robison about any job duty reassignment or other alleged adverse employment action she claimed to experience in 2006 or 2007, which was prior to his employment with AAA.  Martin further says he did not consider Robison's or any other employee's race in making any of the decisions in connection with the 2008 reorganization of the Claims Department.

In addition to Robison, AAA says there were at least four other managers whose positions were eliminated and who were terminated from employment as a result of the realignment of their responsibilities: Ernie Hasse (Caucasian), Ric Phillips (Caucasian), Jeffrey Pope (Caucasian), and Loretta Davis (African-American).  Robison, however, says that Hasse was planning to retire anyway, Phillips was released prior to the reorganization, and Pope hd been absent due to illness and did not return to work.   Thus, Robison says only Davis' position was eliminated like hers.

All claims managers who were going to be displaced by the job eliminations in early 2008 were encouraged to apply for the five newly created manager positions, as well as any other opening corporate-wide. Robison was encouraged to apply for any open claims manager positions, in particular, for a total loss manager position. Robison did not apply for the position, explaining at deposition that it was in auto damage where she says she was not experienced. AAA, however, says that if Robison had applied, she likely would have been hired for that position.

Robison was terminated as of March 1, 2008. At that time, AAA was under a hiring freeze, meaning, according to AAA, that any open positions had to be filled internally if possible.

After her termination, in July 2008, Robison submitted a resume to AAA in connection with a regional claim manager, homeowners position. AAA, however, withdrew the posting related to that position prior to filling it.

AAA filled three claim manager positions in November 2008. The postings for these positions allowed applications only by internal (then-AAA employee) candidates. Each of the positions was filled by an internal candidate. One of the three employees selected for the positions was an African-American female. Robison was not eligible for the positions because she was not then a AAA employee.

In late 2008, approximately nine months after her termination, AAA rehired Robison to a claim representative position, effective December 1, 2008. This position pays approximately seventy-five percent of her prior pay as regional manager.

B.

Meanwhile, on February 14, 2008, Robison filed a charge with the Equal Employment Opportunity Commission (EEOC), claiming racial employment discrimination based on the 2006 CRC audit; the 2006 performance evaluation, and the replacement in 2007 by a Caucasian male.

On June 1, 2009, after she was rehired by AAA, Robison filed a second EEOC charge, focusing on her efforts to be rehired in 2008. She also stated that when she was rehired, another AAA employee, Kelly Gebolys, a Caucasian woman, was promoted to a manager position the same date of her rehire (December 1, 2008). Robison alleged she should have been offered the manager position.

On March 4, 2010, Robison filed the present lawsuit. AAA filed a motion for partial summary judgment, contending that events in 2006 and 2007 were time barred and only her claims based on the 2008 layoff should proceed. The Court agreed and granted AAA's motion. Doc. 24. The Court also noted that the 2006 audit, evaluation, and 2007 replacement may be used as background evidence to the extent relevant to her claims of race discrimination and retaliation related to her 2008 lay off.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

## IV. Analysis

### A. Race Discrimination

#### 1. Prima Facie Case

Title VII forbids an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1). Michigan's Elliott–Larsen Civil Rights Act prohibits the same conduct. Claims of race discrimination under Title VII and Elliot–Larsen may be analyzed together because Michigan courts frequently "turn to federal precedent for guidance in reaching [their] decision" to determine whether a claim has been established in discrimination cases. Radtke v. Everett, 442 Mich. 368, 382, 501 N.W.2d 155, 162 (1993) (quoting Sumner v. Goodyear Co., 427 Mich. 505, 525, 398 N.W.2d 368 (1986)). For analytical purposes, Michigan's Elliott–Larsen Act resembles federal law, and the same evidentiary burdens prevail as in Title VII cases. See In re Rodriguez, 487 F.3d 1001, 1008 n. 2 (6th Cir. 2007); Humenny v. Genex Corp., 390 F.3d

901, 906 (6th Cir.2004); Lytle v. Malady, 458 Mich. 153, 172–73, 579 N.W.2d 906, 914 (1998).

To withstand summary judgment on a race discrimination claim, the plaintiff must either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." Johnson v. Kroger Co., 319 F.3d 858, 864–65 (6th Cir. 2003). Where, as here, a plaintiff has not offered direct evidence, the plaintiff might prevail if she can establish an inferential case of discrimination under the familiar McDonnell Douglas framework. See McDonnell Douglas v. Green, 411 U.S. 792, 802–05 (1973). That construct addresses proof of discriminatory intent by circumstantial evidence, and it requires the plaintiff to present a prima facie case, whereupon the defendant must offer a legitimate reason for its actions. If the defendant does so, the plaintiff cannot proceed unless she offers some evidence that the defendant's proffered justification is a pretext for unlawful discrimination. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 342 (6th Cir. 1997).

A plaintiff may establish a prima facie case of discrimination "by showing that: '(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was ... treated differently than similarly situated nonprotected employees.' " Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir.2008) (internal citations omitted).

While somewhat difficult to follow in its papers, AAA appears to argue that Robison cannot make out a prima facie case because she cannot show she was "qualified" for rehire during the time of her layoff because she was not an internal candidate. This argument is not well-taken. The Court of Appeals for the Sixth Circuit has stated that an

employee is qualified to do his job if "he was doing his job well enough to meet his employer's legitimate expectations." Dews v. A.B. Dick. Co., 213 F.3d 1016, 1023 (6th Cir. 2000). AAA has cited no authority for the proposition that an individual is not "qualified" if an employer is under a hiring freeze. Rather, the element of "qualified" pertains to the employee's abilities, not any hiring policy of the employer. AAA has not argued that Robison fails to establish the other required elements of a prima facie case. As such, Robison has established a prima facie case sufficient to survive summary judgment.

Under the burden-shifting approach, as noted above, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. The employer only has to produce admissible evidence showing "that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-143 (2000) (Defendant's "burden is one of production only, not of persuasion."). Here, AAA has articulated a legitimate non-discriminatory reason for laying off Robison - a departmental restructuring directed by Martin. The burden now shifts to Robison to show that this reason is pretextual.

## 2. Pretext

Once the employer articulates legitimate nondiscriminatory reasons, the burden is on the plaintiff to prove by a preponderance of evidence, that the reasons offered by the employer for its adverse action is not its true reason, but a pretext for intentional discrimination. Burdine, 450 U.S. at 253. Robison must prove by a preponderance of the evidence that the reason that AAA laid her off was intentional race discrimination. St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

In order to prove pretext, she is obligated to show by a preponderance of the evidence, that the employer's reasons "(1) had no basis in fact, (2) did not actually motivate its conduct, or (3) were insufficient to warrant the challenged conduct." Browning v. Department of the Army, 436 F.3d 692, 695 (6th Cir. 2006). Robison has the ultimate burden of producing sufficient evidence from which a jury could reasonably reject AAA's articulated reason and infer that AAA intentionally discriminated against her because of her race. Browning, 436 F.3d at 696.

Robison has not met her burden. As explained above, Martin began considering ways to reorganize the Claims department soon after he was hired in 2007. Robison says that Martin effectuated a reduction-in-force (RIF), which according to her, required him to consider seniority and performance in his decisions per AAA policy.[1] Martin, however, denies it was a RIF. Instead, he says he goal was to "flatten" the organizational structure, eliminate layers of management, which may or may not have resulted in layoffs, and realign responsibilities.

While Robison may view Martin's objective differently, the record does not support her assertion. Martin's statements are unrebutted. It is undisputed that Robison has a hodgepodge of duties that Martin felt did not logically fit together. She had responsibilities related to auto physical damage reporting, certain claim vendor responsibilities, and duties related to an information technology project. Robinson acknowledged the varied nature of these tasks in a conversation with Martin in

---

[1]Robinson also cites a AAA corporate wide memorandum which required staff reductions. Martin, however, testified that reducing headcount was not his goal, but rather to reorganize the Claims department to function more efficiently.

early 2008, stating that several of her direct reports solely focused on technical IT matters, not direct claims management issues. As Martin viewed it, Robison's duties were appropriate to be consolidated with other managers that directly oversaw the various areas for which she had partial responsibility. Martin explained that he placed Robison's auto physical damage responsibilities among employees in the auto physical damage unit of Claims. Likewise, Robison's vendor management duties logically fit with the existing Claims vendor management unit, and her IT duties were assigned to the technology-focused Claims Transformation Team. There is nothing in the record to suggest or infer that this realignment of duties had to do with Robison's race. Robison admits she had few contacts with Martin, who was then new to the company. There is no evidence that Martin exhibited racial bias during his dealings with her. Indeed, Martin's restructuring affected four other Claims managers – three Caucasians and one African-American manager. Martin treated all of these Claims managers, including Robison, exactly the same. This undercuts any finding that Martin's decision as to Robison was a pretext for discrimination.[2]

    Moreover, there is nothing in the record to show that Martin, or anyone at AAA, prevented Robison from applying for open positions before her lay off was effective, which apparently was five open positions. Robison admitted she was encouraged to apply for

---

[2]Robison contends that Robert McMahon, who was subordinate to Martin and who, according to Robison, actually effectuated her layoff testified differently as to Martin's motivations. Robison contends that McMahon testified that the decision was first made as to who to lay off and then it was decided where to reallocate the laid off employee's responsibilities. As AAA points out, however, McMahon did not so testify. A review of the context of the deposition testimony shows that Robison's counsel frst asked anout the reassingment of duties approach and then what was to be done with any responsibilities that remained after someone was laid off. Thus, McMahon's version of the sequence – restructuring and then lay offs, is consistent with Martin's.

one managerial position, a total loss manager, but she did not apply, explaining she did not believe she was qualified. However, the record shows that two of Martin's direct reports, William Bulliner (African-American) and Joseph Johnson (Caucasian) interviewed applicants for the five positions and Martin accepted all of their recommendations, resulting in three of the positions being filled by African-American males. Johnson in particular testified at deposition that he likely would have recommended Robison for the total loss manager position if she had applied. While Robison says Johnson did not know her qualifications, and therefore does not believe she would have been hired, the fact that she never applied is more significant than what Robison believes would have happened.

With respect to her rehire in December 2008, Robison has no evidence that her eligibility for other positions or placement was in any way connected to her race. As explained above, after her lay off, AAA was required to hire internally if at all possible. Any managerial positions which became open after her lay off could not have been offered to Robison because of this policy, not because of her race. While Robison says that because one job was posted on a website Monster.com, which she says shows AAA was not following the hiring freeze, the record shows the position was withdrawn before it was filled.

Robinson points to one position, a claims manager position, that was filled by a Caucasian woman, Kelly Gebolys, on the same day Robison was rehired. Robison says she should have been given that managerial position because she was more experienced. However, at the time the managerial position was posted, it was to be filled internally and was filled internally. Thus, Robison was not eligible for the position. Moreover, Gebolys moved to the managerial position as a promotion. Finally, Robison's

subjective view of her qualifications without more, fails to establish pretext. Hendrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004); Shoonmaker v. Spartan Graphic Leasing, 595 F.3d 261 (6th Cir. 2010). Put simply, AAA rehired Robison when a position became available that could be filled externally and for which Robison applied and was deemed qualified.

Overall, Robison has not shown that AAA's asserted reason for her lay off and subsequent rehire was a pretext for discrimination. The restructuring has a basis in fact and is sufficient to explain AAA's actions.

B. Retaliation

Retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework. See Edgar v. JAC Prods., 443 F.3d 501, 508 (6th Cir.2006). To establish an initial prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence that (1) she engaged in protected activity; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Arban v. West Pub. Corp., 345 F.3d 390, 404 (6th Cir. 2003); Aho v. Dep't of Corrections, 263 Mich. App. 281, 288-89 (2004). If a plaintiff presents a prima facie case, the court proceeds to consider the defendant's legitimate, non-discriminatory reason for the adverse employment action and the plaintiff's proof of pretext.

The problem with Robison's retaliation claim is showing a causal connection between her EEOC charges and her lay off and later rehire. Regarding the events in 2006 and 2007 which formed her first EEOC charge, it is undisputed that the decision-

maker in her lay off - Martin - was not employed by AAA in 2006 at the time of the audit and subsequent performance issues with Robison.  Martin testified he was not aware of Robison's activity related to the 2006 and 2007 incidents.  Thus, there is no connection between her first EEOC charge and Martin's actions.

Moreover, with respect to her to second charge relating to her failure to rehire her sooner, it is undisputed that Robison was not eligible for rehire for any managerial positions because they had to be filled internally, and were filled internally.

Finally, there is no evidence that the fact Robison had previously filed charges affected her lay off or her later rehire.  While Robison was rehired to a position paying less, there is an opportunity for advancement.

Overall, there is nothing in the record to create a genuine issue of material fact that AAA's actions were motivated by Robison's protected activity.

V.  Conclusion

For the reasons stated above, AAAs motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.


Dated:  November 21, 2011         S/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 21, 2011, by electronic and/or ordinary mail.

                                  S/Julie Owens
                                  Case Manager, (313) 234-5160